<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **M.O. and T.O. o/b/o S.O.**, <br><br>Plaintiffs, <br><br>v. <br><br>**NORTH BRUNSWICK TOWNSHIP BOARD OF EDUCATION**, <br><br>Defendant. | Civil Action No. 23-3469 (ZNQ) <br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon two motions. Plaintiffs M.O. and T.O., on behalf of S.O. ("Plaintiffs") filed a Motion for Interim Relief under the Stay-Put Provision of the Individuals with Disabilities Education Act ("IDEA"). ("Plaintiffs' Motion", ECF No. 10.) Defendant North Brunswick Township Board of Education ("Defendant") then filed a Cross-Motion for Summary Judgment. ("Defendant's Cross-Motion", ECF No. 11.) The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will DENY Plaintiffs' Motion and will GRANT Defendant's Cross-Motion.

I.     <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

    A.     <u>**OVERVIEW OF THE IDEA**</u>

The IDEA requires U.S. states that receive federal education funding to ensure that disabled children receive a Free Appropriate Public Education. *See* 20 U.S.C. § 1412(a)(1). School

districts must "identify and evaluate all children who they have reason to believe are disabled under the statute," and "offer an [Individualized Education Plan ("IEP")] that is 'reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013) (citation omitted).

"Should a dispute arise as to a student's education, the IDEA provides for an 'impartial due process hearing.'" *L.R. v. Manheim Twp. Sch. Dist.*, 540 F. Supp. 2d 603, 610 (E.D. Pa. 2008) (quoting 20 U.S.C. § 1415(f)). During the pendency of due process proceedings, Congress provides that "unless the [s]tate or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." *R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 139 (3d Cir. 2013). The so-called "stay-put" provision ("Stay-Put Provision") "protects the status quo of a child's educational placement by preventing 'school districts from effecting unilateral change in a child's educational program.'" *Id.* at 139–40 (quoting *Susquenita Sch. Dist. V. Raelee S. ex rel. Heidi S.*, 96 F.3d 78, 83 (3d Cir. 1996)) (internal quotation marks and citations omitted).

Pursuant to a Congressional requirement, New Jersey has enacted its own "stay-put" rule. That rule "provides in relevant part that 'pending the outcome of a due process hearing, including an expedited due process hearing, or any administrative or judicial proceeding, no change shall be made to the student's classification, program[,] or placement unless both parties agree.'" *R.K. ex rel. R.K. v. Ridgewood Vill. Bd. Of Educ.*, Civ. No. 16-5019, 2016 WL 4443165, at *4 (D.N.J. Aug. 18, 2016) (quoting N.J. Admin. Code § 6A:14-2.7(u)); *see also* N.J. Admin. Code § 6A:14-2.6(d)(10) (providing that "pending the outcome of mediation, no change shall be made to the student's classification, program[,] or placement, unless both parties agree"). "In essence, the New

Jersey regulatory provision . . . requires the same stay put requirement as the IDEA." *R.K.*, 2016 WL 4443165, at *4.

    **B.**    **FACTUAL BACKGROUND[1]**

Plaintiffs M.O and T.O. are the parents and legal guardians of S.O., a 21-year-old woman who has been diagnosed with several disabilities. (Compl. ¶¶ 4–5.) As a result of her disabilities, Defendant's school district has classified S.O. as having "Multiple Disabilities" as defined by the IDEA. (*Id.* ¶ 11.) Given the Multiple Disabilities classification, S.O. is "eligible for special education and related services as well as accommodation in an appropriate special education program and placement under the IDEA." (*Id.*)

In March of 2020, S.O. was an eleventh-grade student at Defendant's district ("School District") high school. (*Id.* ¶ 25.) As a result of the covid-19 outbreak, in mid-March 2020, the School District shut down in-person instruction and offered virtual instruction, though virtual instruction was not effective for S.O. (*Id.* ¶¶ 26–27.) The School District offered in-person instruction for the 2020-2021 school year beginning in September 2020, requiring compliance with the mask mandate put in place by S.O.'s high school requiring students to wear a mask. (*Id.* ¶ 29.) However, S.O. had medical, emotional, and psychological issues when wearing a mask and she was unable to attend school in-person during the 2020-2021 school year because of the mask mandate. (*See id.* ¶¶ 30–34.)

During the 2020-2021 school year, S.O. was a twelfth-grade student. (*Id.* ¶ 37.) On November 19, 2020, Plaintiffs had a meeting with School District to review and revise S.O.'s IEP ("2020 IEP"). (*Id.* ¶ 37.) During the meeting, the School District agreed that S.O. would not

---

[1] The facts are taken from Plaintiffs' Complaint ("Compl.", ECF No. 1), Defendant's Amended Answer ("Am. Answer", ECF No. 6), the Declaration of Plaintiff T.O. ("T.O.'s Declaration", ECF No. 10-2), and Defendant's Statement of Facts submitted pursuant to Local Rule 56.1 ("Def.'s Facts", ECF No. 11-4.) Because Plaintiffs' Motion is not a motion for summary judgment, they have not submitted a statement of material facts.

graduate at the end of the 2020-2021 school year (the end of S.O.'s twelfth-grade year) and instead, S.O. would be placed in Defendant's "Possibilities Plus 18-21 Transition Program" ("Transition Program") through the end of June 2023, the end of the 2022-2023 school year, for additional educational services. (*Id.* ¶¶ 37–40.) Pursuant to N.J.S.A. § 18A:7C-5.2(a), a disabled student who has completed the twelfth grade, and has satisfied all the requirements to receive a diploma, may still participate in the school's graduation ceremony. (*Id.* ¶¶ 44–45.) Instead of receiving a diploma, the student receives a certificate indicating they have completed twelfth grade. (*Id.*) The distinction between completing and graduating twelfth grade is important because "graduation results in the termination of a classified, disabled student's entitlement to receive special education and related services in the future." (*Id.* ¶ 46.) On June 17, 2023, S.O. participated in her high school's graduation ceremony and received a certificate indicating that S.O. would attend the Transition Program. (*Id.* ¶¶ 48–49.) S.O. satisfied all the requirements to graduate twelfth grade, otherwise she would not have been able to receive a certificate. (Def.'s Statement of Facts ¶ 7.)

However, later that year, S.O. did not actually attend the Transition Program because S.O. could not comply with her high school's mask mandate. (Compl. ¶ 60.) Plaintiffs sought accommodations so that S.O. could wear a face shield in lieu of a face mask, but the School District denied the requests.[2] (*Id.* ¶¶ 58–60, 63–64.) Subsequently, on October 11, 2021, the School District sent a letter to Plaintiffs stating that because S.O. was not attending school, she would no longer be enrolled as a student in the Transition Program and that the School District would issue S.O. a diploma. (*Id.* ¶ 66.) A week later, the School District sent another letter confirming that S.O. was disenrolled and that the School District issued a diploma to her. (*Id.* ¶ 68.) Plaintiffs claim that they never received any communication from the School District about terminating

---

[2] In the Amended Answer, Defendant denies Plaintiffs' allegation that the School District did not accommodate Plaintiffs' requests for a mask accommodation. (Am. Answer ¶¶ 58–60, 63–64.)

4

S.O.'s Transition Program services or having S.O. receive a diploma and therefore graduate out of receipt of special education services.[3] (*Id.* ¶¶ 70–75.)

Several months later, in March of 2022, a New Jersey executive order lifted any mask mandate in its entirety. (*Id.* ¶ 77.) Then, in April of 2022, the School District "agreed to place S.O. out-of-district at the Center School, providing her the opportunity to again receive special education and related services through in-person instruction by physically being able to attend school." (*Id.* ¶ 78.) Upon Defendant's approval, on May 2, 2022, S.O. was placed at the Center School. (*Id.* ¶¶ 79–80.) S.O. was to be placed at Center School through June 2023. (Def.'s Statement of Facts ¶ 11.) During S.O.'s time at the Center School, the School District did not prepare an IEP for S.O. (*Id.* ¶ 12.)

### C.     PROCEDURAL HISTORY

#### 1.     Administrative Proceedings

The relevant procedural history begins in April 2023, near the end of S.O.'s time at the Center School. On April 5, 2023, Plaintiffs' legal counsel sent the School District a letter asking if they would provide S.O. an additional year at the Center School under N.J.S.A. § 18A:46-6.3 ("S3434"). (Compl. ¶¶ 53.) S3434 is a 2021 law requiring school districts to provide special education services for an additional year to qualified students for the lack of in-person instruction during the covid-19 pandemic. (*Id.* ¶ 53.) After failing to hear from the School District regarding Plaintiffs' S3434 request, on May 2, 2023, Plaintiffs filed a Request for Mediation with the New Jersey Department of Education ("NJDOE") seeking an additional year at the Center School for S.O under S3434. (*Id.* ¶¶ 112–13.) On May 5, 2023, Plaintiffs received a notice from NJDOE stating that during the pendency of the mediation, S.O. had a right to stay-put protection under the

---

[3] Defendant also denies these allegations. (*See* Am. Answer ¶¶ 72, 74–75.)

Stay-Put Provision. (*Id.* ¶ 114.) Plaintiffs converted the Request for Mediation to a Request for Due Process ("Due Process Request"); the NJDOE confirmed that the Stay-Put Provision applies also while "due process is continuing." (*Id.* ¶¶ 115–16.)

S.O. has not been permitted to remain at the Center School while the Due Process Request remains pending. (*Id.* ¶ 117.) Plaintiffs filed a Motion for Emergency Relief ("Emergency Relief Motion") with Defendant seeking that S.O. be placed at the Center School while the Due Process Request remains pending under the Stay-Put Provision. (*Id.* ¶ 120.) After hearing oral argument on the Emergency Relief Motion, the Honorable Dean J. Buono, A.L.J. (the "ALJ"), who was assigned the case from the New Jersey Office of Administrative Law ("NJOAL"), issued a written decision (the "ALJ's Order") denying the Emergency Relief Motion the next day. (*Id.* ¶¶ 121–22.)

        2.      Proceedings in this Court

Plaintiffs initiated the present action in this Court by filing the Complaint on June 27, 2023, (ECF No. 1); Defendant filed an Amended Answer on August 24, 2023, (ECF No. 6). The Complaint contains four counts. (Compl. ¶¶ 118–48.) Count I seeks declaratory judgment and asks the Court to (1) reverse the ALJ's June 15, 2023 Order and (2) compel Defendant to comply with the Stay-Put Provision under IDEA. (*Id.* ¶ 141.) Count II asks the Court to award S.O. "compensatory education for any time period that Defendant and/or its school district has not been complying with the Stay-Put Provision under the IDEA."[4] (*Id.* ¶ 143.)

---

[4] There are two additional causes of action in the Complaint: Count III asserts discrimination and retaliation claims under § 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act ("ADA"), and the New Jersey Law Against Discrimination ("NJLAD") and Count IV seeks attorney's fees and costs. (Compl. at 31–33.) Plaintiffs' Motion does not seek any relief on either Counts III or IV. Accordingly, the Court only considers the relief Plaintiffs' seek as to Counts I and II.

On October 10, 2023, Plaintiffs filed a brief in support of their Motion. ("Plfs.' Moving Br.", ECF No. 10-3.) On October 23, 2023, Defendant opposed Plaintiffs' Motion and cross-moved for Summary Judgment. ("Def.'s Cross-Br.", ECF No. 11-2.) Plaintiffs then filed a Reply on October 30, 2023. ("Plfs.' Reply Br.", ECF No. 12.) On January 29, 2023, Plaintiffs filed a letter seeking leave to file a sur-reply based on information Plaintiffs obtained from NJDOE relating to S.O.'s enrollment status and graduation during the relevant time period at issue. (ECF No. 16.) The Court granted Plaintiffs' request. (ECF No. 17.) Accordingly, on February 16, 2023, Plaintiffs filed a Sur-Reply ("Plfs.' Sur-Reply", ECF No. 18) and Defendant filed a response ("Defs.' Sur-Reply Resp.", ECF No. 19).

## II. DISCUSSION

### A. DETERMINING THE STANDARD OF REVIEW

As a preliminary matter, it is important that the Court clarify the scope of the record, the procedural posture of the present motions, and the relief sought by the parties given it is relevant to determining the applicable standard of review.

#### 1. Scope of the Record

There are several points to note about the record before the Court in this action, including Plaintiffs' failure to file the administrative record, including the evidence considered by the ALJ when he issued his Order, and additional evidence Plaintiffs filed with the Court in their Sur-Reply.

First, in an affidavit submitted with Defendant's Cross-Motion, counsel for Defendant asserts that Plaintiffs have not filed an administrative record with the Court. ("Harrison's Aff.", ECF No. 11-1 ¶ 7; Def.'s Statement of Facts ¶ 20.) Defendant also raised this issue in their opposition brief. (Def.'s Cross-Br. at 3.) Notably, Plaintiffs have neither confirmed nor denied, or otherwise acknowledged in any brief or letter, Defendant's assertion that they have not filed an administrative record with the Court. Plaintiffs did, however, submit Plaintiff T.O's Declaration

7

along with a three-volume appendix ("Appendix", ECF Nos. 10-4–10-6). To date, Plaintiffs have not characterized or identified the Appendix as the administrative record.

Second, Defendant notes that T.O.'s Declaration itself, and several other documents identified therein, were not presented to the NJOAL. (Def.'s Cross-Br. at 3.) Specifically, Defendant points to Plaintiffs' Exhibits numbered 10–29, bates stamped PA078–PA106.[5] (Harrison Aff. ¶ 6.) Defendant also states that Plaintiffs have not filed any motion seeking leave to supplement the administrative record. (*Id.*) Plaintiffs also do not respond or otherwise address any of these arguments.

Though Plaintiffs remain silent on the administrative record, Plaintiffs do address separate record-related issues. First, Plaintiffs underscore "no testimony was heard in the NJOAL, given that all that occurred was oral argument" and consequently, the ALJ could not have made any credibility determinations. (Plfs.' Moving Br. at 31; *see* Plfs.' Reply Br. at 7.) Second, Plaintiff sought leave to file a Sur-Reply "regarding information provided to [Defendant] pertaining to both S.O.'s enrollment status and graduation" during the 2021-2024 school years. (ECF No. 17 at 1.) Defendant consented to Plaintiffs' request and in its response, Defendant rejected the information's relevance. (*See* Def.'s Sur-Reply Resp.)

Courts have explained that the IDEA "does not delineate any particular process by which litigants are expected to invoke this Court's judicial review. Rather, it merely provides that district courts 'shall receive the records of the administrative proceedings.'" *F.V. v. Cherry Hill Twp. Bd. of Educ. Members*, Civ. No. 22-4401, 2023 WL 4045200, at *3 (D.N.J. June 16, 2023) (quoting 20 U.S.C. § 1415(i)(2)(C)(i)). The IDEA does not define "records"; instead, the definition comes

---

[5] In addition to numbering each exhibit, Plaintiffs have paginated the Appendix with bates stamps. When the Court cites to the exhibits within each volume of the Appendix, it will cite to the page numbers stamped by the Court's e-filing system and not to the bates numbers provided by Plaintiffs.

from the state's administrative procedures out of which the appeal arises. *Id.* In New Jersey, "record" is defined as "all decisions and rulings of the judge and all of the testimony, documents and arguments presented before, during and after the hearing and accepted by the judge for consideration in the rendering of a decision." N.J. Admin. Code § 1:1-2.1.

Here, the proposed record before the Court consists of the three-volume Appendix filed by Plaintiffs, and the additional information submitted via Plaintiffs' Sur-Reply. Although Defendant highlights Plaintiffs' record-related procedural shortcomings, Defendant does not ask the Court to deny Plaintiffs' Motion on procedural grounds for their failure to submit an administrative record or for failure to file a motion to supplement the record.[6] At best, Defendant raises an objection to only a specific group of documents in the Appendix: Exhibits 10-29, bates stamped PA078-PA106. Plaintiffs' Appendix does contain, among other documents, the ALJ's Order. (ECF No. 10-5 at 79–90; *see M.N. v. Sparta Twp. Bd. of Educ.*, Civ. No. 21-19977, 2022 WL 1093667, at *3 n.2 (D.N.J. Apr. 12, 2022) (noting that though the parties failed to make the entire administrative record available to the Court, plaintiffs did provide the court with the relevant ALJ decisions). Accordingly, the Court will limit its review to the record before it, excluding Exhibits 10–29 (ECF No. 10-5 at 3–31), given that they were not part of the administrative proceeding below and Plaintiffs failed to file an appropriate motion to supplement the record. *See F.V.*, 2023 WL 4045200, at *4 ("To the extent [plaintiff's counsel] wished the Court to consider materials that were not part of the original record, the proper procedure was to file a 'motion to supplement' the administrative record pursuant to the IDEA's 'additional evidence clause.'") (internal citations omitted).

---

[6] Though Defendants repeatedly place the burden on Plaintiffs to file the administrative record, courts in this "District have not consistently required any one party to file the administrative record in IDEA appeals." *F.V.*, 2023 WL 4045200, at *4.

        2.        <u>Parties' Motions & Relief Sought</u>

Plaintiffs open their Moving Brief by explicitly stating that they are seeking a "Declaratory Judgment against Defendant . . . providing interim relief, and related relief pursuant to the Local Rules, L. Civ. R. 65.1, and the Federal Rules of Civil Procedure, Fed. R. Civ. P. 65." (Plfs.' Moving Br. at 6; Plfs.' Reply Br. at 5.) Plaintiffs later refer to their motion as "an application for stay-put protection" or an "application for injunctive relief." (Plfs.' Moving Br. at 28; Plfs.' Reply Br. at 7.) Defendant interprets Plaintiffs' Motion as "essentially a request for summary judgment on Counts I and II" of the Complaint. (Def.'s Cross-Br. at 4.) To that end, Defendant cross-moved for summary judgment on Counts I and II.

Despite the various ways Plaintiffs style their motion, at its crux, Plaintiffs are asking this Court to reverse the ALJ's Order denying S.O's stay-put protection while the Due Process Request remains pending and to compel Defendant to comply with the IDEA's Stay-Put Provision and place S.O. at the Center School during the pendency of the Due Process Request. (Plfs.' Moving Br. at 9–10.) Such relief is consistent with Count I of the Complaint. (*See* Compl. ¶¶ 118–41.) In addition, Plaintiffs also seek "additional relief" in the form of awarding "compensatory education services" to S.O. for the time period Defendant has failed to abide by the Stay-Put Provision.[7] (Plfs.' Moving Br. at 9–10.) This relief is consistent with Count II. (*See* Compl. ¶¶ 142–43.) Defendant's Cross-Motion asks the Court to (1) affirm the ALJ's Order and (2) deny Plaintiffs' request for compensatory education services because they have failed to exhaust their

---

[7] Plaintiffs' basis for its compensatory education services relief is inconsistent. First, Plaintiffs state that they seek compensatory education services "for the time period of deprivation resulting from the Board not abiding by the IDEA's Stay-Put Provision." (Plfs.' Moving Br. at 10.) Then, in the next paragraph, Plaintiffs call this case "unique" and explain that they seek "to have S.O. remain placed at The Center School for <u>an additional school year</u> (retroactively from the commencement of the 2023-2024 school year, in July 2023), based upon" S3434. (*Id.* at 10–11) (emphasis in original). Despite the inconsistencies, in their Reply Brief, Plaintiffs clarify that S.O. should receive compensatory education services for the time period of deprivation based on Defendant's failure to comply with the Stay-Put Provision. (Plfs.' Reply Br. at 6.)

10

administrative remedies. (Def.'s Cross-Br. at 3.) Notwithstanding the way Plaintiffs or Defendant have framed their motions, Plaintiffs' Motion and Defendant's Cross-Motion effectively operate as appeals of the ALJ's Order. *See Garden Acad. v. E.M. on behalf of B.M.*, Civ. No. 1920655, 2021 WL 308108, at *5 (D.N.J. Jan. 29, 2021).

### 3. Standard of Review

When reviewing a challenge to an administrative decision in an IDEA case, the district court generally applies a modified version of *de novo* review, and the court is required to give due weight to the factual findings of the ALJ. *See Q.T. on behalf of H.P.-B. v. Pottsgrove Sch. Dist.*, 70 F.4th 663, 666 (3d Cir. 2023) (citing *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009)). "'Factual findings from the administrative proceedings are to be considered *prima facie* correct,' and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'" *Id.* When the challenge is to an ALJ's determination of a student's "current educational placement," or if a plaintiff brings claims for compensatory education, however, courts exercise plenary review as to these questions of law. *See Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 865 (3d Cir. 1996) ("Our review of this legal issue is plenary."); *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009).

Regarding the injunctive relief aspect of Plaintiffs' Motion, the Court's analysis as to stay-put protection is not subject to the traditional four-part test for a preliminary injunction under Fed. R. Civ. P. 65. But, as both parties note, the Stay-Put Provision functions like an automatic injunction; if stay-put protection applies, then children "*regardless of whether their case is meritorious or not*, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Drinker*, 78 F.3d at 864 (emphasis added) (internal quotation marks omitted). Accordingly, courts need not analyze all four factors typically

considered for a "traditional" preliminary injunction. *See J.E. ex rel. J.E. v. Boyertown Area Sch. Dist.*, 452 F. App'x 172, 177 (3d Cir. 2011) (citing *Drinker*, 78 F.3d at 864).

B.   ANALYSIS

1.   <u>ALJ Appeal and Stay-Put Protection Request</u>[8]

Plaintiffs seek reversal of the ALJ's Order on largely one ground: the circumstances of S.O.'s placement at the time Plaintiffs filed their Due Process Request, or S.O.'s "then current educational placement" under the Stay-Put Provision. Notably, the parties disagree about the classification of S.O.'s time at the Center School. Plaintiffs' position is that the School District was required to prepare an IEP for S.O. because it placed her at a private school approved by the NJDOE. (Compl. ¶¶ 84–90.) Defendant's position is that S.O.'s placement at the Center School "was accomplished not through an [IEP], but through a Compensatory Services Plan which expressly ended on June 16, 2023." (Am. Answer ¶¶ 84–86, 97–98, 100–01, 109, 119, 123, 128–29, 141; *see also* Def.'s Statement of Facts ¶ 11.)

The parties and the ALJ agree that for the purposes of the relevant analysis, S.O.'s "current educational placement" at the time Plaintiffs filed the Due Process Request was the Center School. (ECF No. 10-5 at 85.) However, Plaintiffs argue that the ALJ erred in concluding that S.O. is not entitled to stay-put protection because (1) S.O. "failed to avail herself of the" Transition Program during Fall 2021 and (2) S.O. was not placed at the Center School via a valid IEP, but rather via a "one-year compensatory services plan" to end in June 2023. (*Id.* at 87, 90.) The Court disagrees with Plaintiffs.

---

[8] In their discussion, Plaintiffs sparingly rely on authority to support their arguments. In fact, they only summarily rely on *Drinker* for the proposition that "a waiver of a classified, disabled student's right to stay-put protection must be explicit." (Plfs.' Moving Br. at 40.) However, there is no issue of waiver here.

"The IDEA does not define 'current educational placement.'" *L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, 384 F. App'x 58, 61 (3d Cir. 2010). The Third Circuit has held that the "current educational placement 'refers to the operative placement actually functioning at the time the dispute first arises. If an IEP has been implemented, then that program's placement will be the one subject to the stay put provision.'" *Id.* (quoting *Drinker*, 78 F.3d at 867) (internal citations omitted). If there is no IEP in effect when the dispute arises, "the stay-put placement is that under which the child is actually receiving instruction at the time the dispute arises." *Id.*

Here, there was no functioning IEP for S.O. at the time she was placed at the Center School. The last IEP S.O. received was in November of 2020. Accordingly, S.O. was not receiving instruction at the Center School under any IEP. Plaintiffs recognize this point, stating that School District "never prepared an IEP" for S.O.'s placement at the Center School. (Plfs. Moving Br. at 37.) Despite the lack of an IEP for the Center School, Plaintiffs rely on S.O.'s last two IEPs, as well as various correspondence and documents, to argue that the School District had "recommended that S.O. be in a placement and program through June 2023." (*Id.* at 36.) Therefore, Plaintiffs argue S.O. should be permitted to remain at the Center School given she should receive education services through June 2023. (*Id.* at 38–39.)

Plaintiffs' argument that the Court should consider the last two IEPs to support a finding that S.O. should remain put at the Center School is misplaced for several reasons. First, the 2020 IEP is not valid because S.O.'s eligibility to receive education services ceased upon receiving her diploma in October 2021. IDEA guidelines "clarify that a state is under no obligation to 'make a FAPE available' to children with disabilities 'who have graduated from high school with a regular high school diploma." *D.C. v. Mount Olive Twp. Bd. of Educ.*, Civ. No. 12-5592, 2014 WL 1293534, at *31 (D.N.J. Mar. 31, 2014) (quoting 34 C.F.R. § 300.102(a)(3)(i)). Plaintiffs identify

various procedural shortcomings with the manner in which the School District issued S.O. her diploma.[9] (Plfs.' Reply Br. at 12–18.) Notably, Plaintiffs' improperly raise their challenges to S.O.'s graduation and receipt of a diploma in the present action: "[b]ecause graduation amounts to an IDEA 'change in placement,' . . . it triggers the procedural protections of the IDEA, and parents may contest the proposed graduation through the due process hearing." *D.C.*, 2014 WL 1293534, at \*31 (quoting 34 C.F.R. § 300.102(a)(3)(iii)). However, consistent with the ALJ's finding, the Court agrees that the School District issued a diploma to S.O. in Fall 2021 after S.O. failed to attend the Transition Program. (ECF No. 10-5 at 87; Def.'s Statement of Facts ¶ 9; Compl. ¶¶ 66, 68; Certification of Barbara Barr, ECF No. 11-6 ¶ 6.) As such, S.O. was no longer entitled to continued education services.

Second, Plaintiffs' 2020 IEP is not relevant to Plaintiffs' stay-put protection because the 2020 IEP placed S.O. in the Transition Program starting in September 2021, not at the Center School. Importantly, S.O's transition from the Transition Program to the Center School came about because of S.O.'s receipt of a diploma which ended her education services at the Transition Program; S.O.'s placement at the Center School did not stem from the 2020 IEP. As such, it is unclear to the Court how the 2020 IEP is relevant here given S.O. was not attending the Transition Program when Plaintiffs brought the Due Process Request.

Third, it was not an IEP that placed S.O. at the Center School, but rather it was a compensatory services plan that placed S.O. there with a specified end date of June 2023. (Def.'s Cross-Br. at 11.) Plaintiffs contest the position that Defendant offered to place S.O at the Center School as "a form of post-graduate compensatory education plan." (Plfs.' Moving Br. at 38.)

---

[9] Plaintiffs' position with respect to S.O.'s diploma is inconsistent. On one hand, they identify all of the various IDEA regulations Defendant's violated when they issued S.O.'s diploma. But on the other hand, they claim that whether Defendant issued a diploma is "in question." (Plfs.' Moving Br. at 36.) The record before the Court, however, supports a finding that S.O. was issued a diploma in Fall 2021.

14

However, Plaintiffs do not provide any other explanation about how S.O. was ultimately placed at the Center School. In fact, their arguments and supporting documents repeatedly, and opaquely, assert that "it was agreed between [Plaintiffs] and the [School District] that [S.O.] would be able to continue her schooling." (T.O.'s Decl. ¶ 35; *see also* Compl. ¶ 78 ("[i]n or around April 2022, the Defendant's school district agreed to place S.O. out-of-district at the Center School").) Additionally, Plaintiffs "acknowledge that we provided two documents each titled 'Compensatory Services Plan'" in July and December of 2022. (T.O.'s Decl. ¶ 38; ECF No. 10-5 at 32–37.) Accordingly, based on the record before it, the Court agrees that Defendant placed S.O. at the Center School not based on her 2020 IEP but based on a compensatory services plan.

Moreover, the ALJ also explained that the compensatory services plan was "gratuitously provided by the [School District] seven months after [S.O.] accepted her diploma." (ECF No. 10-5 at 89.) Plaintiffs dispute this characterization and improperly support their position by relying on S.O.'s 2020 IEP. Plaintiffs argue that it cannot be "gratuitous" to place S.O. at the Center School through June 2023 if the 2020 IEP already contemplated that S.O. would receive special education and related services through June 2023 anyway. (Plfs.' Moving Br. at 38–39.) However, as explained, the 2020 IEP is not the operative IEP that placed S.O. at the Center School. The 2020 IEP contemplated S.O. would be placed in the Transition Program, not the Center School.

Finally, the Stay-Put Provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Drinker*, 78 F.3d at 864 (internal citations omitted). The Third Circuit has also "consistently stated that the purpose of the stay-put provision is the preservation of the status quo during disputes about a child's educational placement." *L.Y.*, 384 F. App'x at 62 (citing *Pardini v. Allegheny*

*Intermediate Unit*, 420 F.3d 181, 190 (3d Cir. 2005)); *see also J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 272 (3d Cir. 2002) ("Stay-put orders are designed to maintain the status quo during the course of proceedings.")  Here, any stay-put protection would permit S.O. to remain at the Center School where she was "actually receiving instruction" when Plaintiffs initiated the Due Process Request. *L.Y.*, 384 F. App'x at 61.  However, the "status quo" of S.O.'s educational placement at the Center School was a one-year term expected to end in June 2023, not any time after that.  Further, even if the Court found Plaintiffs' reliance on the 2020 IEP persuasive, the 2020 IEP expected that S.O. would receive education services only through June 2023.  As such, though there is a pending Due Process Request, granting S.O. stay-put protection at the Center School for a time period after June 2023 is inconsistent with her intended and expected placement there.

The Court, in line with Defendant's arguments and the ALJ's conclusion, finds that the School District did not place S.O. at the Center School via the 2020 IEP, or any IEP at all.  Instead, S.O. was placed at the Center School via a compensatory education plan which expired in June 2023.  The Court affirms the ALJ's Order and agrees that the Stay-Put Provision is not implicated here because S.O.'s then-current placement was a term at the Center School that terminated at the end of June 2023.  Further, because the Court finds that S.O. is not entitled to stay-put protection, the Court also denies Plaintiffs' request to compel Defendant to place S.O. at the Center School through the pendency of Plaintiffs' Due Process Request hearing.

2. Compensatory Education

Next, Plaintiffs ask the Court to award compensatory education to S.O. for the time Defendant did not permit S.O. to remain at the Center School after Plaintiffs filed the Due Process Request, in violation of the Stay-Put Provision.  However, given that the Court has concluded,

16

above, that S.O. is not entitled to stay-put protection, it further finds that Defendant has not violated the Stay-Put Provision. S.O. is therefore not eligible for compensatory education.

## III.     CONCLUSION

For the reasons stated above, the Court will DENY Plaintiffs' Motion (ECF No. 10) and will GRANT Defendant's Cross-Motion (ECF No. 11).  An appropriate Order will follow.


Date: **May 31, 2024**

                                                     s/ Zahid N. Quraishi
                                                   **ZAHID N. QURAISHI**
                                                   **UNITED STATES DISTRICT JUDGE**